# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTWAUN FREEMAN,<br>    Plaintiff,<br><br>         v.<br><br>WARDEN WILLIAMS, *et al.*<br>    Defendants. | :<br>:<br>:<br>:  CIVIL ACTION NO. 23-CV-2655<br>:<br>:<br>: |

## MEMORANDUM

**SÁNCHEZ, C.J.**                                                                                                              **JULY 14, 2023**

Plaintiff Antwaun Freeman, who is currently incarcerated at SCI Chester, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that prison officials failed to protect him from other inmates when he was incarcerated at the George W. Hill Correctional Facility ("GWHCF"), and denied him medical care for injuries he sustained in an attack. Freeman seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Freeman leave to proceed *in forma pauperis* and dismiss his Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because some of Freeman's claims will be dismissed without prejudice, he will be granted the option of proceeding only on the claims the Court concludes pass statutory screening or filing an amended complaint to attempt to cure the defects discussed below.

## I.   FACTUAL ALLEGATIONS

Freeman names the following individuals as Defendants in his Complaint: (1) Warden Williams; (2) Chief Leech; (3) Lt. Moore; (4) Sgt. Jones; (5) John Doe, identified as a nurse; (6)

another John Doe, also identified as a nurse; and (7) Sgt. Jenkins.[1]  (Compl. at 2, 4.)[2]  Freeman alleges that in the weeks leading up to January 25, 2022, Defendants Sgt. Jones and Lt. Moore informed Freeman that they "received information that inmates were planning to attack [him]" and that one of the inmates "produced a weapon as well."  (*Id.* at 8.)  Freeman requested the source of this information, but Jones and Moore said that "they could not tell [him]."  (*Id.*)  Freeman asked to be moved off the housing unit "because [he] feared for [his] life" but Jones and Moore responded that he would have to return to the housing unit.  (*Id.*)  Jones and Moore then "went around the jail telling inmates [Freeman] was a rat[,] putting [his] life in danger."  (*Id.*)

On January 25, 2022, "on the same block he asked to get off of," Freeman was stabbed in his neck, head, ear, face, and back.  (*Id.*)  Defendant Sgt. Jenkins was the block Sergeant at the time.  (*Id.* at 9.)  Freeman was not taken to a hospital for treatment, rather, a nurse "stitched

---

[1] In drafting his Complaint, Freeman checked the boxes on the form he used to indicate that he seeks to name the Defendants in their individual and official capacities. However, Freeman appears not to have understood the implication of checking the official capacity box. Claims against government employees named in their official capacity are indistinguishable from claims against the governmental entity that employs the Defendant.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Despite checking the "official capacity" box, Freeman does not attempt to allege an official capacity claim, since he does not allege that a municipal policy or custom caused the constitutional violations alleged in the Complaint.  *See Monell*, 436 U.S. at 694 (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)).  Accordingly, it appears Freeman may have checked these boxes in error.  In any event, he has not stated a basis for any official capacity claims, so any such claims will be dismissed.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[him] up" incorrectly. (*Id.* at 8.) Freeman alleges that, as a result, the stitches fell out and "caused [him] to bleed badly for several days." (*Id.*) Freeman spoke to Defendant Chief Leech on February 2, 2022 about his need for medical attention, and Leech represented that he would speak with Warden Williams. (*Id.*) Freeman also wrote "grievances to the Warden about [his] medical needs" but was "completely ignored." (*Id.*) He also "notified" both John Doe Defendants, yet he was "never seen by medical staff" at GWHCF. (*Id.* at 9.) At some point shortly thereafter, Freeman appears to have been transferred to SCI Smithfield, where his stiches were removed. (*Id.* at 9-10.) Although unclear, it appears the stitches were removed on or about nine days after Freeman's conversation with Chief Leech. (*See id.* at 8-9.)

Based on those allegations, Freeman brings Eighth Amendment claims based on the Defendants' alleged failure to protect him from other inmates and their deliberate indifference to his need for medical care after he was attacked.[3] (*Id.* at 3.) He seeks damages. (*Id.* at 6.)

## II. STANDARD OF REVIEW

The Court will grant Freeman leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[3] Freeman indicates that he has been convicted and sentenced, so the Eighth Amendment governs his claims. (Compl. at 5.); *see Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

[4] Because Freeman is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Freeman is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

Freeman asserts his constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

"Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if

4

he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

### A.     Failure to Protect

Freeman alleges that Defendants Lt. Moore and Sgt. Jones failed to protect him from an attack by other inmates.  (Compl. at 7.)  The Court also understands Freeman to be raising a failure to protect claim against Sgt. Jenkins because he was the block Sergeant at the time Freeman was attacked.  (*Id.* at 9.)

Prison officials have a duty to take reasonable measures to guarantee the safety of inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  In that regard, prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'"  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.

To state a plausible failure to protect claim, Freeman must allege that:  (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm.  *See id.*; *Hamilton*, 117 F.3d at 746.  Deliberate indifference is a subjective standard.  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).  Freeman

must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id*. at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 125.

Freeman alleges that in the weeks prior to the attack, Lt. Moore and Sgt. Jones informed him that inmates were planning to attack him and that one of those inmates was armed with a weapon. (Compl. at 8.) He also alleges that Lt. Moore and Sgt. Jones refused to move him to another housing unit after he expressed fear for his life and that they contributed to the risk to his safety by telling inmates he "was a rat." (*Id.*) Freeman was ultimately attacked on the housing unit from which he sought a transfer. These allegations support an inference that Lt. Moore and Sgt. Jones were aware of a specific risk to Freeman's safety from other inmates, one of whom had a weapon that could potentially be used to carry out an attack, as well as an inference that they were deliberately indifferent to that risk by refusing to move Freeman off of his housing unit and telling inmates he was a "rat." *See, e.g.*, *Jackson v. O'Brien*, No. 18-00032, 2021 WL 3174687, at *4 (W.D. Pa. July 27, 2021) ("Being labeled a 'snitch' or a 'rat' can be a dangerous designation in prison."). Accordingly, Freeman may proceed at this time on his failure to protect claims against Lt. Moore and Sgt. Jones.

To the contrary, Freeman does not articulate a plausible basis for a failure to protect claim against Sgt. Jenkins. The only factual basis for this claim is Freeman's assertion that Sgt. Jenkins was responsible for the block at the time he was attacked. Nothing in the Complaint alleges that Sgt. Jenkins was aware of or disregarded a risk to Freeman's safety or otherwise describes how Jenkins was involved in the violation of Freeman's constitutional rights. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*,

556 U.S. at 677) (emphasis in original).  Accordingly, Freeman has not stated a claim against Sgt. Jenkins.

      B.      **Deliberate Indifference to Medical Needs**

Freeman also brings constitutional claims against Warden Williams, Chief Leech, and the two John Doe nurses for deliberate indifference to his medical needs. (Compl. at 7.)  To state a constitutional claim based on the failure to provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 835.  As with a failure to protect claim, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Deliberate indifference in this context is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or

not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Freeman's deliberate indifference claims are insufficiently developed to be plausible. Initially, it is unclear whether Freeman is alleging that he required new stitches or simply the removal of the old stitches considering that his stitches appear to have been removed shortly after his transfer to another facility, which appears to have happened close in time to the attack. It is also unclear whether or when the bleeding Freeman claims to have experienced as a result of the improper stitches stopped. In any event, assuming for purposes of statutory screening that Freeman's improperly stitched injuries constituted a serious medical need that was not met at GWHCF prior to his transfer, Freeman has not adequately alleged that Warden Williams, Chief Leech, and the two John Doe nurses acted with deliberate indifference to those needs.

Freeman alleges that he spoke with Chief Leech to seek medical attention approximately eight days after the incident, and that Leech represented that he would speak with Warden Williams. (Compl. at 8.) It is not clear what, if anything, Leech did or did not do thereafter or how quickly Freeman was transferred to another prison after this discussion. Given the absence of details of this conversation, such as a time frame of the conversation relative to how Freeman's injury was progressing and when he was transferred, and since there is no suggestion Chief Leech is a medical professional or responsible for medical decisions, the Court concludes that Freeman has not stated a plausible deliberate indifference claim against Leech. Freeman has also failed to state a plausible deliberate indifference claim against Warden Williams based on Williams's receipt of grievances or involvement in the grievance process, since involvement of non-medical prison officials in the grievance process does not constitute personal involvement in the underlying constitutional violation in the context of a deliberate indifference claim. *See Diaz*

*v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (*per curiam*) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). Freeman's only allegation against the John Doe nurses is that he "notified" them of his desire for medical treatment but was not seen by medical staff. This conclusory allegation, which provides no details about when Freeman notified the nurses, the context in which he notified them, and what, specifically, he notified them of, is insufficient to state a deliberate indifference claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). For these reasons, Freeman has not stated a plausible basis for a claim that any Defendants were deliberately indifferent to his serious medical needs.

9

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Freeman leave to proceed *in forma pauperis* and dismiss his Complaint in part without prejudice.  Freeman's failure to protect claims against Lt. Moore and Sgt. Jones pass statutory screening and are ready to proceed to service under Federal Rule of Civil Procedure 4 and 28 U.S.C. § 1915(d).  The remainder of Freeman's claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Considering Freeman's *pro se* status, prior to directing service the Court will give Freeman the option of filing an amended complaint in the event he can address the defects the Court has noted.  In the alternative, Freeman may advise the Court that he seeks to proceed only on the failure to protect claims against Lt. Moore and Sgt. Jones that pass statutory screening.

An appropriate Order follows, which provides Freeman further guidance on his options for proceeding.

                                        **BY THE COURT:**

                                        */s/ Juan R. Sánchez*
                                        **JUAN R. SÁNCHEZ, C.J.**