IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTWAUN FREEMAN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-2655 |
| | : | |
| WARDEN WILLIAMS, *et al.* | : | |
|     Defendants. | : | |

<u>MEMORANDUM</u>

**SÁNCHEZ, C.J.**                                                                                                                                          AUGUST 16, 2023

        Currently before the Court is an Amended Complaint filed by Plaintiff Antwaun Freeman pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his Eighth Amendment rights when they failed to protect him from other inmates at the George W. Hill Correctional Facility ("GWHCF"), and denied him medical care for injuries he sustained in an attack. For the following reasons, the Court will dismiss the Amended Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and direct service of the Amended Complaint so that Freeman may proceed at this time on his claims that survive statutory screening.

**I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

        Freeman's initial Complaint named the following Defendants: (1) Warden Williams; (2) Chief Leech; (3) Lt. Moore; (4) Sgt. Jones; (5) John Doe, identified as a nurse; (6) another John Doe, also identified as a nurse; and (7) Sgt. Jenkins. (Compl. at 2, 4.)[1] Freeman alleged that on January 25, 2022, he was stabbed by another inmate and that, prior to the attack, Defendants Jones and Moore informed him that inmates were planning to attack him, one of whom had a

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

weapon.  (*Id.* at 8.)  Jones and Moore also allegedly refused to move Freeman to another unit despite his request, and told other inmates that Freeman was a "rat."  (*Id.*)  Freeman also alleged that a nurse stitched his injuries incorrectly, such that the stitches fell out and "caused [him] to bleed badly for several days."  (*Id.*)  He attempted to seek medical attention for the bleeding but did not receive additional treatment until he was transferred to another facility, within approximately two weeks.  (*Id.* at 8-9.)

In a July 17, 2023 Memorandum and Order, the Court granted Freeman leave to proceed *in forma pauperis* and dismissed certain of his claims after screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court concluded that the Complaint alleged an adequate basis for a failure to protect claim against Defendants Jones and Moore but failed to state a failure to protect claim against Defendant Jenkins, who appeared to have been sued solely because he was responsible for the block at the time Freeman was attacked.  *Freeman v. Williams*, No. 23-2655, 2023 WL 4564782, at *3 (E.D. Pa. July 17, 2023) ("Nothing in the Complaint alleges that Sgt. Jenkins was aware of or disregarded a risk to Freeman's safety or otherwise describes how Jenkins was involved in the violation of Freeman's constitutional rights.").  The Court further concluded that Freeman failed to state a claim for deliberate indifference to his serious medical needs against the remaining Defendants because it was "unclear whether Freeman [was] alleging that he required new stitches or simply the removal of the old stitches," and "whether or when the bleeding Freeman claims to have experienced as a result of the improper stitches stopped."  *Id.* at *4.  "In any event, assuming for purposes of statutory screening that Freeman's improperly stitched injuries constituted a serious medical need that was not met at GWHCF prior to his transfer, Freeman [failed to] adequately allege[] that Warden Williams, Chief Leech, and the two John Doe nurses acted with deliberate

indifference to those needs." *Id.* Freeman was given an opportunity to file an amended complaint in the event he could cure the defects in the claims the Court dismissed.

Freeman returned with the pending Amended Complaint, which names as Defendants Sargent Jones, Lieutenant Moore, Sargent Jenkins, Chief Leech, and Warden Williams, and which is based on allegations similar to those in the initial Complaint. (Am. Compl. at 1-3, 15-16.) Freeman alleges that in the weeks leading up to January 25, 2022, Defendants Jones and Moore told Freeman that "another inmate wanted [him] to be stabbed because [Freeman] was a rat" and that the inmate "produced a weapon." (*Id.* at 12.) Jones and Moore would not divulge the identity of the inmate and declined Freeman's request to be moved to another block. (*Id.*) Freeman further alleges that he had "several incidents" with Jones and Moore prior to the meeting, one of which "was an assault," that Jones called him a "rat," and that he was "ignored for almost 4 months prior to getting stabbed." (*Id.* at 13, 15.)

On January 25, 2022, Freeman was attacked by other inmates at GWHCF on the same block from which he sought a transfer. (*Id.* at 12.) The attack took place during "tier exercise for rec." and Freeman, who was on the bottom tier, "had just locked in." (*Id.*) Freeman alleges that Defendant Jenkins "buzzed the door" to open his cell at a time when it should not have been reopened, allowing the inmates who attacked him to enter the cell. (*Id.* at 12, 15.) The inmates stabbed Freeman in his head, face, neck, back, and ear. (*Id.* at 12.) At some point during the attack, Freeman ran from the cell, at which point he saw Sargent Jenkins "at the control panel" and observed that there was no correctional officer on the block. (*Id.*) It appears the other inmates followed Freeman because he alleges that the inmates "continued to beat and stab" him. (*Id.*)

Freeman received stitches on his left cheek, left ear, and neck. (*Id.*) However, he also alleges that his unspecified "medical needs" related to the stabbing were not met, apparently related to the fact that his neck was still bleeding. (*Id.* at 13.) The day following the attack, a prison official took Freeman's "written statement on all of [his] issues" and sent a copy to a lieutenant on Unit 8. (*Id.* at 14.) Freeman alleges that he was "isolated on unit 8D 103 with no access to medical and being denied request[] slips, grievances [and] medical forms" that were required for him to access medical care. (*Id.* at 13.) To the contrary, he also alleges that he submitted "medical forms" on July 27, 2022 and July 28, 2022 after having been instructed to do so by nurses on the pod to whom he showed blood on his neck, although he claims those forms were "ignored." (*Id.*) On February 2, 2022, Freeman showed Chief Leech his "wounds" but Leech "refused to help [him]." (*Id.*) A Sargent who is not named as a Defendant came to Freeman's cell later that day and "gave [him] [an] inmate interview sheet" because medical requests and grievance forms allegedly were not available. (*Id.*) Freeman further alleges that Moore "pushed [him] to the top of the transfer list to get moved upstate." (*Id.*) It is unclear when Freeman was transferred.

Based on those allegations, Freeman brings Eighth Amendment claims for failure to protect and deliberate indifference to his serious medical needs. (*Id.* at 3.) He seeks monetary damages. (*Id.* at 5.)

## II.   STANDARD OF REVIEW

Since Freeman is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v.*

4

*McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Freeman is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.    DISCUSSION

Freeman asserts his constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

"Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken

5

by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

### A. Failure to Protect

Freeman brings failure to protect claims against Defendants Sgt. Jones, Lt. Moore, Sgt. Jenkins and Warden Williams.  (Am. Compl. at 15.)  Prison officials have a duty to take reasonable measures to guarantee the safety of inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  In that regard, prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'"  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To state a plausible failure to protect claim, Freeman must allege that:  (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm.  *See id.*; *Hamilton*, 117 F.3d at 746.  Deliberate indifference is a subjective standard.  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).  Freeman must allege that the prison officials "knew or were aware of and disregarded an excessive risk to

6

[his] health or safety." *Id*. at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 125.

Freeman alleges that in the weeks prior to the attack, Lt. Moore and Sgt. Jones informed him that an inmate who was armed with a weapon wanted to stab him and that Lt. Moore and Sgt. Jones refused to move him to another housing unit when he sought a transfer. Freeman was subsequently stabbed on that unit by other inmates. These allegations support an inference that Lt. Moore and Sgt. Jones were aware of a specific risk to Freeman's safety from other inmates, one of whom had a weapon that could potentially be used to carry out an attack, as well as an inference that they were deliberately indifferent to that risk by refusing to move Freeman to another housing unit. Accordingly, Freeman may proceed at this time on his failure to protect claims against Lt. Moore and Sgt. Jones.

To the contrary, the Amended Complaint does not articulate a plausible basis for a failure to protect claim against Sgt. Jenkins or Warden Williams. Freeman's claim against Jenkins is based on the allegation that Jenkins "buzzed the door so inmates could come in [Freeman's] cell putting [him] in harms way" even though Freeman's door should not have been opened. (Am. Compl. at 12, 15.) Absent additional allegations that Jenkins knew the attack was going to occur or that he was aware of an excessive risk to Freeman's safety, this allegation is insufficient to state a failure to protect claim against Jenkins. *See Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (*per curiam*) ("Here, Burton has failed to allege that Smith behaved with deliberate indifference in unlocking Burton's cell. The complaint sets forth no facts to suggest that Smith knew that Kindle would attack Burton."); *Harriell v. Cuzzupe*, No. 22-3268, 2022 WL 3703205, at *2 (D.N.J. Aug. 26, 2022) ("Without more information about Officer Gaston's knowledge of the facts, for instance, whether he heard Miller accusing Plaintiff of being a snitch just before he

opened Miller's cell door, or that he could see Plaintiff was standing right next to Miller's cell door when he opened it, Plaintiff has not sufficiently alleged that Officer Gaston was deliberately indifferent to an excessive risk to Plaintiff's safety."); *Pearson v. Karnes*, No. 10-0058, 2011 WL 864792, at *3 (M.D. Pa. Mar. 9, 2011) ("At most, Mr. Pearson's allegations might support a claim that CO Mease was negligent in opening his door at the same time the other inmate's door was opened. Allegations of negligence, however, are not sufficient to maintain an action under 42 U.S.C. § 1983."). Freeman's failure to protect claims against Warden Williams also fail because Freeman has not alleged any basis for concluding that the Warden was personally involved in the alleged violation of Freeman's constitutional rights. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original) *see also Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("[A] director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

### B. Deliberate Indifference to Medical Needs

Freeman also brings claims for deliberate indifference to his medical needs against Defendants Sgt. Jones, Lt. Moore, Chief Leech, and Warden Williams. (Am. Compl. at 15-16.) To state a constitutional claim based on the failure to provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. As with a failure to protect claim, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at

837. Deliberate indifference in this context is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

The Amended Complaint suffers from similar deficiencies as the initial Complaint regarding Freeman's claims of deliberate indifference to his medical needs. As before, the nature of the medical need at issue is unclear. Freeman appears to be alleging that he was still bleeding from the site of the wound on his neck after receiving stitches following the attack, but he does not describe his condition with sufficient clarity in a manner that would support a conclusion that the need was serious or that specific medical care was required. In any event, Freeman alleges no facts from which one could infer that Sgt. Jones, Lt. Moore, and Warden Williams were aware of Freeman's injuries or any alleged need for medical care in the time frame following the attack as is necessary to state a deliberate indifference claim against them.

9

In other words, Freeman has not alleged these Defendants' personal involvement in the events underlying any lack of medical care following the attack. Although Freeman alleges that he showed Chief Leech his "wounds" a week after the attack, and that Leech "was aware of all other incidents at this time" but "refused to help," (Am. Compl. at 13), these allegations are too vague to establish that Leech was aware of a serious medical need that warranted his action under the circumstances. Absent specific allegations about the nature of Freeman's injury, the medical care allegedly required, any discussion with Leech, and when Freeman was transferred relative to his requests for care, the allegations are too sparse to support a plausible deliberate indifference claim against Leech. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). For these reasons, Freeman has not stated a plausible basis for a claim that any Defendants were deliberately indifferent to his serious medical needs.

**IV. CONCLUSION**

For the foregoing reasons, the Court will dismiss Freeman's claims for deliberate indifference to his serious medical needs and his failure to protect claims against Defendants Jenkins and Williams without further leave to amend at this time. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). Freeman's failure to protect claims against Lt. Moore and Sgt. Jones pass statutory screening and are ready to proceed

to service under Federal Rule of Civil Procedure 4 and 28 U.S.C. § 1915(d).  An appropriate Order follows, which directs service of the balance of the Amended Complaint.

**BY THE COURT:**

　　**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**