IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTWAUN FREEMAN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-2655 |
| | : | |
| LT. MOORE, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                          **February 10, 2025**

      Plaintiff Antwaun Freeman, a former inmate at the George W. Hill Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 and state law against four Corrections Officers at the prison: Lt. Moore, Sgt. Jones, Sgt. Jenkins, and Major Leach.[1] Freeman seeks damages for physical injuries and mental anguish he sustained when he was attacked by another inmate inside the prison and denied medical attention. Defendants ask this Court to dismiss Freeman's complaint in its entirety with prejudice, arguing Freeman has failed to state a plausible claim for relief against any of them. Additionally, Defendants Jenkins and Leach seek dismissal of the claims against them as barred by the statute of limitations. While the Court declines to resolve the statute of limitations question at this stage, it agrees Freeman has failed to state a plausible Eighth Amendment denial of medical attention claim against Defendants Jones and Jenkins, a plausible intentional infliction of emotional distress claim against Defendant Leach, or a plausible civil rights conspiracy claim against any of the Defendants. Defendants' motion to dismiss will be granted as to those claims. Because Defendants have not shown Freeman's remaining claims are insufficiently pled, the motion will be denied as to the rest of the complaint. The case will proceed as to Freeman's Eighth Amendment failure to protect and failure to intervene claims against Defendants Moore, Jones,

---

[1] Defendants note Freeman has incorrectly identified Sgt. Jones and Major Leach as Lt. Jones and "Chief Leech," respectively. ECF No. 46 at 2.

and Jenkins, his Eighth Amendment denial of medical attention claim against Defendants Moore and Leach, and his intentional infliction of emotional distress claim against Defendants Moore, Jones, and Jenkins.

**BACKGROUND[2]**

Freeman's claims arise out of an incident in which he was stabbed in his cell by another inmate on January 25, 2022. Second Am. Compl. ¶ 10, ECF No. 41. Just before the attack, the prison "was running 'tier' exercise for the inmates, cell by cell." *Id.* ¶ 13. Freeman had finished exercising and was locked in his cell when the cell door suddenly re-opened and another inmate rushed in and stabbed him in the head, face, neck, back, and ear. *Id.* ¶¶ 10, 14. Freeman ran out of his cell and yelled for help, at which point he was attacked by two additional inmates. *Id.* ¶ 11. While yelling for help, Freeman saw Defendant Jenkins at the control panel on the cell block, but Jenkins did not intervene. *Id.* ¶ 12. There were no correctional officers on the cell block when Freeman was attacked. *Id.* ¶ 15.

Before the attack, Defendants Moore, Jones, and Jenkins were all aware other inmates had threatened to stab Freeman. The week before the attack, Moore and Jones met with Freeman about the threats. *Id.* ¶ 16. They told him another inmate had reported to Jenkins that Freeman was receiving threats of stabbing from multiple inmates who called Freeman a "rat." *Id.* Jenkins also confiscated a weapon from one of the inmates who made the threats. *Id.* ¶ 17. Freeman asked Moore and Jones for the names of the inmates who were threatening him, but they refused to tell

---

[2] The following facts are drawn from Freeman's Second Amended Complaint. In evaluating Defendants' motion to dismiss, the Court "accept[s] [Freeman's] allegations as true and draw[s] all inferences in his favor." *Dennis v. City of Phila.*, 19 F.4th 279, 284 (3d Cir. 2021).

him. *Id.* ¶ 18. Freeman then asked to be relocated to protective custody or a different cell block, but Moore and Jones denied this request as well. *Id.* ¶ 19.

After the attack, Freeman was placed in an isolation unit and repeatedly denied medical care for his injuries. *Id.* ¶¶ 20, 22. The block officer and counselor on the unit told Freeman that Defendant Moore had written a memorandum directing personnel on the unit to prohibit Freeman from leaving his cell for any reason, "even if [Freeman] was in dire need of medical treatment." *Id.* ¶ 21. A week after the attack, Defendant Leach visited Freeman in his cell and denied his request for medical care, even though Freeman's wounds were still bleeding. *Id.* ¶ 23.

On July 11, 2023, approximately 18 months after the attack, Freeman commenced this action by filing a pro se complaint against Moore, Jones, Jenkins, Leach, and others,[3] along with an application for leave to proceed in forma pauperis. On July 17, 2023, this Court granted Freeman leave to proceed in forma pauperis and dismissed most of the claims in the complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). ECF Nos. 5, 6. The Court allowed Freeman's failure to protect claims against Defendants Moore and Jones to proceed and granted him 30 days in which to file an amended complaint. ECF No. 6. Freeman filed an amended complaint on August 11, 2023, again naming Moore, Jones, Jenkins, and Leach as defendants. ECF No. 7. On August 16, 2023, this Court issued an opinion and order again allowing Freeman's failure to protect claims against Defendants Moore and Jones to proceed but dismissing the rest of the complaint. ECF Nos. 8, 9. The Court dismissed all claims against Defendants Jenkins and Leach and directed the Clerk of Court to terminate them as parties to this action. ECF No. 9. On

---

[3] Freeman's original complaint also named the warden of the prison and two "John Doe" medical providers as defendants. He asserted Eighth Amendment failure to protect claims against Moore and Jones, alleged Jenkins was the block sergeant on the day he was stabbed, and asserted an Eighth Amendment denial of medical care claim against Leach.

3

September 5, 2023, this Court ordered the U.S. Marshals Service to serve Defendants Moore and Jones in accordance with Federal Rule of Civil Procedure 4(m). ECF No. 11. The following month, believing Moore and Jones had been served, this Court directed them to respond to the Amended Complaint within 14 days. ECF No. 15. When they failed to do so, the Court directed Freeman to pursue default remedies against them under Federal Rule of Civil Procedure 55. ECF No. 16. Freeman obtained entry of Moore and Jones's defaults in November 2023 and filed a motion for default judgment in January 2024. ECF Nos. 17-19. The Court then scheduled an assessment of damages hearing. ECF No. 22.

In March 2024, counsel entered a notice of appearance on Freeman's behalf and sought a continuance of the assessment of damages hearing, which the Court granted. ECF Nos. 23-25. Before the scheduled hearing date, however, counsel appeared for Defendants Moore and Jones and moved to strike service of original process as to both of them. ECF Nos. 28-29. On May 15, 2024, this Court granted the motion and set aside the entry of default, finding Moore and Jones had never been properly served. ECF Nos. 31, 32. The Court directed that Freeman be given an appropriate period of time in which to serve Defendants via the U.S. Marshals Service, if necessary. ECF No. 32. Jones waived service in June 2024 and then moved to dismiss the Amended Complaint or, in the alternative, for a more definite statement. ECF Nos. 35, 37. In response, Freeman, now represented by counsel, sought leave to file a second amended complaint. ECF No. 39. On August 2, 2024, this Court issued an order granting Freeman's petition for leave to amend and directing him to file his proposed second amended complaint, which included claims not only against Moore and Jones but also against Jenkins and Leach. ECF No. 40. The order also addressed service as to Defendants Jenkins and Leach as newly re-added defendants. *Id.* On August 20, 2024, defense counsel waived service on behalf of Defendants Moore, Jenkins, and

4

Leach and filed a motion to dismiss for failure to state a claim on behalf of all four named Defendants. ECF Nos. 43-46.

In his Second Amended Complaint, Freeman brings claims against all Defendants pursuant to 42 U.S.C. § 1983 for violating his Eighth and Fourteenth Amendment rights. Freeman seeks to hold Defendants Moore, Jones, and Jenkins liable for failing to protect him from, and failing to intervene during, the assault. *Id.* ¶¶ 27-40. Freeman also seeks to hold all Defendants liable for denying him medical attention. *Id.* ¶¶ 41-42. In addition, Freeman brings a state law claim against all Defendants for intentional infliction of emotional distress, and alleges Defendants conspired to violate his civil rights in violation of state and federal law. *Id.* ¶¶ 43–52. All Defendants have moved to dismiss the Second Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), alleging it fails to state a claim. Jenkins and Leach also argue the claims against them are barred by the applicable statute of limitations. Freeman opposes Defendants' motion to dismiss.

**DISCUSSION**

Under Rule 12(b)(6), a court must dismiss a complaint that lacks "sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, the reviewing court accepts the complaint's "factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (citation omitted). The court "disregard[s] legal conclusions and recitals

of the elements of a cause of action supported by mere conclusory statements.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

Defendants Jenkins and Leach seek dismissal of all claims against them on the ground they are barred by the applicable two-year statute of limitations.[4] A defendant may raise a limitations defense in a Rule 12(b)(6) motion "if the [time] bar is . . . apparent on the face of the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). Jenkins and Leach argue the claims against them in the Second Amended Complaint accrued either on January 25, 2022 (when Freeman was attacked) or on February 2, 2022 (the date on which Leach is alleged to have denied Freeman access to the prison medical unit). *See* ECF No. 46-1 at 10. Freeman's Second Amended Complaint was not filed until August 6, 2024, more than two years later. The limitations issue in this case thus turns on whether the Second Amended Complaint relates back to Freeman's earlier complaints, filed on July 11, 2023 and August 11, 2023, well within the limitations period.

Relation back of amendments is governed by Federal Rule of Civil Procedure 15(c), which provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
>   (A) the law that provides the applicable statute of limitations allows relation back;
>
>   (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

---

[4] The statute of limitations applicable to each of Freeman's claims is two years. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (§ 1983 claims); *Kliesh v. Select Portfolio Servicing, Inc.*, 527 F. App'x 102, 104 (3d Cir. 2013) (Pennsylvania civil conspiracy); *Ormsby v. Luzerne Cnty. Dep't of Pub. Welfare Off. of Hum. Servs.*, 149 F. App'x 60, 62 (3d Cir. 2005) (Pennsylvania intentional infliction of emotional distress).

>   (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>       (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>       (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Jenkins and Leach argue the relation-back issue in this case is governed by Rule 15(c)(1)(C) because Freeman's Second Amended Complaint asserts claims against them as "newly added parties." ECF No. 46-1 at 11. They maintain the Second Amended Complaint does not relate back to Freeman's original filing because two of the three criteria for relation back are not satisfied. While they concede the claims in Freeman's original complaint "appear to allege a similar act, occurrence and incident as to Plaintiff's assault" (i.e., that Rule 15(c)(1)(B) is satisfied), they contend they did not receive notice of this action within the Rule 4(m) service period (as required under Rule 15(c)(1)(C)(i)) and "there is no possible claim that this is a case where an original defendant was mistakenly identified" (as required under Rule 15(c)(1)(C)(ii)). *Id.* at 11-12.

It is not clear, however, that Rule 15(c)(1)(C) applies in the circumstances presented here, where Freeman seeks to reassert claims against Defendants who were named in his original and amended complaints, but were later dismissed from the case. The parties have not cited any case law addressing relation back in this context, and based on the Court's own research, there appears to be scant authority on point.

At least one court has held that relation back of an amendment as to a previously dismissed defendant should be assessed under Rule 15(c)(1)(B), so long as final judgment has not been entered as to that defendant under Rule 54(b). *Wang v. Zymergen Inc.*, No. 21-6028, 2024 WL

7

3811844, at *6 (N.D. Cal. Aug. 14, 2024). In that case, the plaintiffs sought leave to amend to reassert claims against a group of defendants who had been dismissed from the case without prejudice a year earlier. Because the court in dismissing the claims did not enter final judgment as to the dismissed defendants under Rule 54(b), the dismissal order "did not end the action as to the . . . . claim or the [defendants]," who remained parties to the action. *Id.*; Fed. R. Civ. P. 54(b) (providing that unless the court "direct[s] entry of a final judgment as to one or more, but fewer than all, claims or parties," any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Thus, because the claims in the amendment were asserted against "existing parties," relation back was governed by Rule 15(c)(1)(B). *Wang*, 2024 WL 3811844, at *6; *cf. Blair v. Comprehensive Healthcare Mgmt. Servs., LLC*, Nos. 18-254 & 18-1667, 2021 WL 3855931, at *6 (W.D. Pa. Aug. 27, 2021) (denying motion to dismiss as untimely claims asserted outside the limitations period against defendants who were sued within the limitations period, but were later voluntarily dismissed, where the dismissal order was not a final judgment under Rule 54(b)).[5]

Other courts have analyzed relation back of amendments against previously dismissed defendants under Rule 15(c)(1)(C), treating the dismissed defendants as "new parties." *See, e.g.*, *Nghiem v. Santa Clara Univ.*, No. 21-6872, 2023 WL 3012494, at *4 (N.D. Cal. Mar. 20, 2023);

---

[5] Although the Third Circuit has not squarely addressed the relation-back issue presented in this case, it has endorsed the view that "Rule 54(b) *does* 'create an exception to the usual rule' that a plaintiff may not revive dismissed claims after a statute of limitations or repose expires," even when the dismissed claims sought to be revived are asserted against a previously dismissed defendant. *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 12 F.4th 337, 347-50 & n.6 (3d Cir. 2021).

8

*Nite & Day Power Techs. v. Corp. Cap. Res., Inc.*, No. CV-89-20298, 1995 WL 7942, at *5 (N.D. Cal. Jan. 5, 1995). Given the uncertainty as to which relation-back standard applies, the Court declines to resolve the statute of limitations issue at this stage, on the existing briefing. Defendants may renew their argument that the claims against Jenkins and Leach are time-barred at a later stage.

Defendants also argue the Second Amended Complaint should be dismissed in its entirety because Freeman has failed to state a plausible claim for relief against any of them under any of the theories asserted. This Court agrees Freeman has not stated a plausible Eighth Amendment denial of medical attention claim against Defendants Jones and Jenkins, a plausible intentional infliction of emotional distress claim against Defendants Jenkins and Leech, or a plausible conspiracy claim against any Defendants. Defendants' motion will be granted as to those claims. Because Defendants have not shown Freeman's Eighth Amendment failure to protect and failure to intervene claims, his Eighth Amendment denial of medical attention claim as to Defendants Moore and Leach, or his intentional infliction of emotional distress claim against Defendants Moore and Jones are deficient, the motion will be denied as to those claims.

Freeman's failure to protect claim against Defendants Moore, Jones, and Jenkins is sufficient to survive a motion to dismiss. To state a plausible failure to protect claim, a plaintiff must plead facts showing (1) he was "incarcerated under conditions posing a substantial risk of serious harm," (2) the defendant acted with deliberate indifference to that risk, and (3) the defendant's deliberate indifference caused harm. *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). A prison official acts with deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must "both be aware of facts from which the inference could be drawn that a

9

substantial risk of serious harm exists, and . . . must also draw that inference." *Id*. Because deliberate indifference is a subjective standard, it requires "knowledge on the part of the official." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Such actual knowledge may, however, be inferred from the circumstances, including the obviousness of the risk in question. *See Farmer*, 511 U.S. at 842.

Defendants argue the failure to protect claim should be dismissed because Freeman has failed to plead facts suggesting either that his conditions of incarceration posed a substantial risk of serious harm or that Defendants acted with deliberate indifference. The Court disagrees. The Second Amended Complaint alleges that a week before Freeman was attacked, Defendants Moore, Jones, and Jenkins were aware that multiple inmates had called him a "rat" and threatened to stab him and that one of those inmates had a weapon, which Jenkins confiscated. Second Am. Compl. ¶¶ 16-17. The threats were sufficiently serious that Moore and Jones told Freeman about them. *Id*. ¶ 16. Fearing for his life, Freeman asked to be transferred to protective custody or a different cell block, separate from the inmates who threatened him, yet Moore and Jenkins refused his request. *Id*. ¶ 19.

Defendants argue these allegations are insufficient because the Second Amended Complaint does not identify the inmates who threatened Freeman, fails to establish that the same inmates who threatened him committed the attack, and does not say whether the inmates who threatened (or attacked) him were housed on the same cell block as Freeman. ECF No. 64-1 at 6. Defendants note that "[t]hreats from an unknown source do not equate to an impending attack." *Id*. As an initial matter, the Second Amended Complaint alleges the source of the threats was unknown only to *Freeman*, not to Defendants. It is thus unsurprising that the Second Amended Complaint does not identify the inmates who threatened Freeman: when Freeman asked Moore

and Jones who made the threats, they "refused to divulge [the inmates'] identities." Second Am. Compl. ¶ 18. As the Court previously concluded in allowing the failure to protect claim in Freeman's original and amended complaints to proceed against Defendants Moore and Jones,[6] Freeman's allegations support the inference that Defendants were aware of a specific risk to his safety from other inmates and that they were deliberately indifferent to that risk by refusing to move him to another housing unit or to protective custody. *See* ECF No. 5 at 6; ECF No. 8 at 7. This is true whether or not the inmates who made the threats are the same inmates who ultimately attacked Freeman, especially where Freeman is alleged to have been labeled a "rat" by "multiple inmates." *See, e.g.*, *Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020) (noting "other circuits have held that prisoner officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference"). The motion to dismiss will denied as to Freeman's failure to protect claim.

Defendants do not separately address Freeman's failure to intervene claim, so the Court will allow that claim to proceed against Defendants Moore, Jones, and Jenkins.[7]

---

[6] The Court dismissed the failure to protect claim in Freeman's prior complaints against Defendant Jenkins because those complaints alleged only that Jenkins was responsible for Freeman's cell block at the time he was attacked or that he buzzed Freeman's cell door open just prior to the attack. ECF No. 5 at 6; ECF No. 8 at 7. In contrast, the Second Amended Complaint alleges, inter alia, that Jenkins knew other inmates had called Freeman a rat and threatened to stab him, personally confiscated a weapon from one of the inmates who made the threats, and deliberately chose not to move Freeman to another cell block. Second Am. Compl. ¶¶ 16-17, 25.

[7] The Court notes that to prevail on an Eighth Amendment claim based on a correctional officer's failure to intervene in an attack on an inmate, a plaintiff must show the officer "had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mesinger*, 293 F.3d 641, 650 (3d Cir. 2002). Freeman has stated a plausible failure to intervene claim against Defendant Jenkins, who is alleged to have observed the attack and Freeman's cries for help from the control panel, yet did nothing to intervene to stop the assault. Second Am. Compl. ¶ 12. While Freeman alleges Moore and Jones also "had an affirmative duty to intervene on behalf of the plaintiff whose constitutional rights were being violated in their presence while plaintiff was being assaulted by

11

Defendants move to dismiss Freeman's Eighth Amendment denial of medical attention claim on the ground that, as non-medical corrections staff, they cannot be liable for deliberate indifference to Freeman's medical needs when Freeman admits to receiving medical treatment at the prison. They also argue the claim should be dismissed as to Defendants Jones and Jenkins because there are no allegations either of them prevented Freeman from obtaining medical treatment or otherwise seeking medical assistance. While the latter argument is persuasive, the former is not. The claim will therefore be dismissed as to Defendants Jones and Jenkins but not as to Defendants Moore and Leach.

The Third Circuit has recognized that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). In such circumstances, "non-medical prison official[s]' cannot 'be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference'" unless they have "'reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) (second alteration in original) (quoting *Spruill*, 372 F.3d at 236). This principle is inapplicable here, however, because Freeman's Second Amended Complaint—the operative complaint in this case—denies he was under the care of medical experts following the attack.

As Defendants note, in his pro se Amended Complaint, Freeman acknowledged receiving stitches on his face, neck, and ear after the attack. ECF No. 46-1 at 8 (citing ECF No. 7 at 12). But Freeman has since filed a Second Amended Complaint, which omits this allegation and instead

---

other inmates," *id.* ¶ 34, the basis for this claim is unclear, as Freeman also alleges "there were no correctional officers on [his] cell block" when he was attacked, *id.* ¶ 15.

states that after the stabbing incident, Freeman was "denied all medical care." Second Am. Compl. ¶ 20. While Defendants argue the allegation in Freeman's prior complaint is nevertheless an admission that must bind him, the Third Circuit has held otherwise, noting that at the motion to dismiss stage, a "plaintiff cannot be bound by allegations in [a] superseded complaint," even when the amendment "flatly contradicts the initial allegation." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172-73 (3d Cir. 2013).[8] As the allegations in Freeman's Second Amended Complaint are controlling at this stage, dismissal is not warranted on this basis.

Dismissal of Freeman's denial of medical attention claim is warranted as to Defendants Jones and Jenkins, however, as neither of them is alleged to have prevented Freeman from obtaining medical treatment. To be liable under § 1983, an individual defendant "must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Freeman alleges Moore authored a memo instructing personnel stationed in Freeman's unit "to not allow [him] to leave his cell for any reason even if [he] was in dire need of medical treatment." Second Am. Compl. ¶ 21. He also alleges Leach visited him in his cell a week after the attack and denied him access to the prison medical ward, even though his wounds were still bleeding. *Id.* ¶ 23. However, Freeman includes no similar allegations suggesting either Jones or Jenkins played any role in denying him medical attention. The claim will therefore be dismissed as to both Defendants.

Turning to Freeman's claim for intentional infliction of emotional distress, Defendant's motion to dismiss will be granted as to Defendant Leach but denied as to the remaining Defendants.

---

[8] As the Court of Appeals noted, however, "a party's assertion of contrary factual positions in the pleadings is [not] without consequence." *W. Run Student Hous. Assocs.*, 712 F.3d at 172. Rather, "[a] superseded pleading may be offered as evidence rebutting a subsequent contrary assertion" at a later stage of the case. *Id.* at 172-73.

13

To prevail on an intentional infliction claim, a plaintiff must establish four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982) (quoting *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)). The conduct in question "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Defendants argue Freeman has failed to identify any specific acts that rise to the level of extreme or outrageous conduct or to allege sufficiently severe emotional distress.[9] ECF No. 46-1 at 13.

Freeman's intentional infliction claim focuses on the conduct by which Defendants "deliberately and recklessly allowed [him] to be brutally assaulted by another inmate without intervening to stop the assault."[10] Second Am. Compl. ¶ 45. Such conduct includes Defendants' refusal to place Freeman in protective custody or transfer him to another cell block after learning that multiple inmates had called him a "rat" and threatened to stab him, as well as their failure to

---

[9] Defendants also seek dismissal of this claim on the ground that "medical testimony is necessary for a party to prove Intentional Infliction of Emotional Distress." ECF No. 46-1 at 13. This argument is premature. While a plaintiff may have to present "competent medical evidence of emotional distress" to prevail on an intentional infliction claim, *Gray v. Huntzinger*, 147 A.3d 924, 929 (Pa. Super. Ct. 2016), this is not a *pleading* requirement.

[10] Freeman also faults Defendants for "their deliberate and reckless classification system" which "repeatedly encouraged inmate on inmate assaults by allowing violent inmates to roam freely with non-violent inmates and encouraging correctional officers to ignore those assaults." Second Am. Compl. ¶ 46. However, there are no allegations suggesting Defendants played any role with respect to the classification system.

come to his aid when multiple inmates attacked him shortly after the threats became known. *See id.* ¶¶ 10-12, 16-19. Similar allegations that correctional officers knowingly exposed inmates to a significant risk of harm have been found sufficient to state a plausible intentional infliction claim at the pleading stage. *See Doe v. Pa. Dep't of Corr.*, No. 20-23, 2021 WL 1583556, at *17 (W.D. Pa. Feb. 19, 2021) (holding allegations that, by refusing to reassign an incarcerated plaintiff to more secure housing, correctional personnel "knowingly exposed [plaintiff] to a significant risk of harm at the hands of an inmate who had threatened to kill [plaintiff]" were sufficient to state an intentional infliction claim at the pleading stage), *report and recommendation adopted by* 2021 WL 1115373 (W.D. Pa. Mar. 24, 2021); *Mattis v. Dep't of Corr.*, No. 16-306, 2017 WL 6406884, at *16 (W.D. Pa. Dec. 15, 2017) (holding allegations that correctional personnel forced plaintiff to accept a cellmate, despite numerous warnings that he would turn violent if placed with a cellmate, resulting in a violent confrontation were sufficient to support an intentional infliction claim at the pleading stage). The Court will therefore deny the motion to dismiss as to Defendants Moore, Jones, and Jenkins. Because the intentional infliction claim focuses solely on Freeman's attack, the claim will be dismissed as to Leach, who is not alleged to have played any role with respect to the attack.

    Finally, the Court agrees with Defendants that Freeman has failed to state a plausible claim for conspiracy to violate civil rights, under § 1983 or state law. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). Proof of an agreement is also required to prevail on a civil conspiracy claim under Pennsylvania law. *See Scully v. US WATS, Inc.*, 238 F.3d 497, 516 (3d Cir. 2001) (holding civil

15

conspiracy requires proof that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means" (citation omitted)). Defendants argue Freeman's conspiracy claim should be dismissed because he "has presented no evidence of any agreement." ECF No. 46-1 at 14. While evidence is not required at the pleading stage, a plaintiff must provide more than conclusory allegations. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("To properly plead . . . an agreement, 'a bare assertion of conspiracy will not suffice.'" (quoting *Twombly*, 550 U.S. at 556). Rather, the plaintiff must allege facts from which the existence of an agreement can plausibly be inferred. *Id.*

Freeman alleges Defendants "conspired among themselves," Second Am. Compl. ¶ 51, but offers no facts suggesting an agreement or understanding existed among them. Freeman emphasizes actions Moore and Jones took together by meeting with him, informing him of the threats against him by other inmates, and refusing to disclose the names of those inmates or to relocate him. *Id.* ¶ 52. However, these allegations merely describe concerted action, not an agreement to violate his rights. *Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) ("As 'the linchpin for conspiracy is agreement,' concerted action, without more, cannot suffice to state a conspiracy claim." (citation omitted)). As to the remaining Defendants, Freeman simply recites that the threats against him were initially reported to Jenkins, who confiscated a weapon from one of the inmates involved, and that Leach refused to allow Freeman to obtain medical care for his wounds. Second Am. Compl. ¶ 52. No facts are pleaded to support a plausible inference that either Jenkins or Leach acted pursuant to an agreement with the other Defendants (or any of them). Accordingly, Freeman conspiracy claim will be dismissed.

16

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss Freeman's Second Amended Complaint will be granted in part and denied in part. The motion will be granted as to Freeman's denial of medical care claim against Jones and Jenkins, his intentional infliction of emotional distress claim against Defendant Leach, and his civil rights conspiracy claim against all Defendants. The motion will be denied as to Freeman's failure to protect and failure to intervene claims against Defendants Moore, Jones, and Jenkins, his denial of medical care claims against Defendants Moore and Leach, and his intentional infliction of emotional distress claim against Defendants Moore, Jones, and Jenkins. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.